[Civ. No. 27210.   Second Dist., Div. One.   Nov. 18, 1963.]

LEONARD LEVINE, Plaintiff and Respondent, v. ALICE CATT ARMSTRONG, Defendant and Appellant.

Warner, Sutton & Warner and Caryl Warner for Defendant and Appellant.

Lester M. Fleischner for Plaintiff and Respondent.

FOURT, J.—This is an appeal by defendant from a judgment entered in an action for the recovery of money after a trial by the court sitting without a jury.

The chronology of significant events is as follows:

On March 30, 1961, plaintiff filed a verified complaint for money asserting therein four causes of action. In the first cause of action (breach of contract) plaintiff alleged in substance that defendant by oral agreement employed plaintiff "to typeset and make up new pages and effect changes, corrections and revisions on existing pages" for a certain book entitled "Who's Who in California"; by the terms of the contract defendant promised to pay the sum of $17 for each and every page and the sum of $9 for each and every man hour plaintiff worked on existing pages; that plaintiff made up a total of 124 new pages and expended 571 man hours on effecting changes, etc., on existing pages; that plaintiff did not complete his work by November 1, 1960, but that the delay was caused "solely by reason of defendant's actions and inactions"; that on or about November 21, 1960, the parties orally modified the aforesaid contract in only one particular—defendant employed plaintiff to typeset names of certain people with a list thereof to be furnished and provided by defendant so that, if defendant desired, the name of a purchaser or donee of one of said books could be stamped in gold thereon; that the reasonable value of such extra work is now and was then in the total sum of $30, and that defendant has failed to pay $5,068.28, the unpaid balance due under the said contract as modified to plaintiff's damage in that sum.

The second, third and fourth causes of action were common counts (work, labor and services; quantum meruit; and open book account) wherein plaintiff asserted he had been damaged in the sum of $5,068.28. On May 22, 1961, defendant who was then represented by the law firm of Taylor, Sherman and Heller, filed her verified answer to plaintiff's complaint.

In response to plaintiff's first cause of action (i.e., breach of contract) defendant among other things admitted that defendant agreed to pay to plaintiff $17 for each and every new page which plaintiff typeset and in addition thereto defend-

ant agreed to pay the plaintiff the sum of $9.00 per hour for work performed by plaintiff in revising, correcting and typesetting on pages which were known as existing pages. Defendant further admitted that plaintiff typeset and made up a total of 120 new pages at an agreed contract price of $17 per page. Defendant also admitted that defendant had promised and agreed to pay the plaintiff the reasonable value of the extra work in accordance with oral modification of the agreement (i.e., the typesetting of the names of certain people) and that the reasonable value of such work is $30. Defendant then asserted that there had been a total sum due and owing to plaintiff by the defendant in the amount of $2,358, but that defendant paid plaintiff the sum of $2,208.72, leaving a balance due and owing to plaintiff by defendant for services performed in the sum of $149.28.

Defendant's answer to plaintiff's causes of action asserted in the form of common counts was in substance that defendant denies that there is an unpaid balance of $5,068.28 or any other sum except the sum of $149.28.

In addition to the above, defendant also asserted a counterclaim in the sum of $10,000 predicated upon plaintiff's failure to perform and to complete the contract on or before November 1, 1960.

On March 19, 1962, a pretrial conference order was filed. Therein among other things are set forth the issues that were to be resolved at the trial. The issues were, first, the extent of the work performed by plaintiff for the defendant and the reasonable contract value thereof; second, whether the agreement of the parties provided for completion by plaintiff of the work by November 1, 1960, and if so whether plaintiff breached the contract by not completing the work by said date, and finally, third, if the contract was to be performed not later than November 1, 1960, was such delay due to the fault of plaintiff or of the defendant. The pretrial conference order incorporated by reference a joint pretrial statement of the parties and individual pretrial statements of each of the parties.

In plaintiff's individual pretrial statement he asserted among other things that "except as modified on or about November 21, 1960, the said August 9, 1960, contract constituted the sole and only contract or agreement ever entered into by and between plaintiff and defendant. . . ."

In defendant's individual pretrial statement it was asserted among other things that "on or about October 25, 1960

the said contract was orally modified whereby plaintiff agreed to perform said work at the agreed price of $17.00 per page for each page in the new book over and above the number of pages in the Second Edition of said book, and $9.00 per hour for work of revising and typesetting on pages other than biographical pages'' [i.e., deleting the $9.00 per hour charge for the alterations of existing pages except for irregular pages of nominal importance].

On September 21, 1962, findings of fact and conclusions of law were filed.[1] Judgment was entered September 24, 1962.[2] Defendant's motion for a new trial was denied and the within appeal followed.

Defendant's first contention is that the trial court

[1]''FINDINGS OF FACT
''I
''It is true that plaintiff Leonard Levine typeset and made up a total of one hundred twenty four new pages and employed five hundred seventy one man hours in typesetting changes from the corrections of the text of the 1947 edition of Who's Who in California.
''II
''It is true that plaintiff did not complete all of said work by November 1, 1960. It is true that defendant did not furnish to plaintiff all of the final copy to be typeset prior to November 1, 1960 and furnished some of said copy after said date.
''III
''It is true that within two years prior to the commencement of this action dependant [sic] became indebted to plaintiff in the sum of $7,277.00 and that no part thereof has been paid to plaintiff except the sum of $2,208.72.

''It is not true that defendant suffered damages in the sum of $10,000.00 or in any other sum.
''CONCLUSIONS OF LAW
''I
''That plaintiff Leonard Levine is entitled to a judgment against defendant, Alice Catt Armstrong, in the sum of $5,068.28, together with interest thereon at seven percent per annum from March 3, 1961, to the date hereof, together with his costs incurred herein.
''II
''That defendant, Alice Catt Armstrong, is not entitled to take anything on her counterclaim herein.''
[2]''IT IS ADJUDGED that plaintiff, LEONARD LEVINE recover from defendant, ALICE CATT ARMSTRONG, the sum of $5,068.28, together with interest therein at the rate of seven per cent (7%) per annum from March 3, 1961, until the date hereof, in the sum of $552.06 together with his costs of suit herein in the sum of $110.63.
''IT IS FURTHER ADJUDGED that defendant, ALICE CATT ARMSTRONG, take nothing by her counterclaim against plaintiff, LEONARD LEVINE.''

erred in failing to make an express finding on the issue of contract modification.

Defendant did not assert in her answer to plaintiff's complaint that the contract of August 9, 1960, had been modified. However, in her individual pretrial statement defendant did assert that the contract was orally modified on or about October 25, 1960, ''whereby plaintiff agreed to perform said work at the agreed price of $17.00 per page for each page in the new book over and above the number of pages in the Second Edition of said book, and $9.00 per hour for work of revising and typesetting on pages other than biographical pages.''

While it is clear that the trial court did not make any express finding on the question of contract modification, defendant failed to make a written request for a specific finding (Code Civ. Proc., § 634). What is stated in *City of National City* v. *California Water & Tel. Co.*, 204 Cal.App.2d 540, 545 [22 Cal.Rptr. 560] is, in part, apposite:

''At this juncture it is appropriate to consider certain rules of law pertaining to the sufficiency of findings and the need therefor under the evidence. [1] As a general rule 'a judgment will not be set aside on appeal because of a failure to make an express finding upon an issue if a finding thereon, consistent with the judgment, results by necessary implication from the express findings which are made.' (*Richter* v. *Walker,* 36 Cal.2d 634, 640 [226 P.2d 593]; *Beksinski* v. *Beksinski,* 151 Cal.App.2d 674, 676 [312 P.2d 268].) [2] However, this rule does not apply if the appealing party made a request for a specific finding upon the issue in controversy. In the latter event, by virtue of the provisions of section 634 of the Code of Civil Procedure, the court, on appeal, may not infer that the trial court found in favor of the prevailing party on the issue. [3] On the other hand, it is not the purport of the code section under consideration that in the event a request for a specific finding is made and denied, the court on appeal must infer a finding unfavorable to the prevailing party. Where such a request has been made and denied the judgment must stand or fall on the finding expressly made unless the evidence on the issue on controversy is undisputed, is of such a nature that it reasonably cannot be disbelieved, and no conflicting inferences can be drawn therefrom. [Citations.] [4] In the latter event the issue properly is one of law and not of fact; no finding need be made thereon; and when made is not binding on the reviewing court. [Citations.]''

Defendant's contention that the trial court committed er-

ror cannot be sustained. It would appear from the findings that the trial court rendered judgment in favor of plaintiff upon his second cause of action—common count for work, labor and services. ■ A finding that a party became or is indebted is a finding of ultimate fact and sufficient on a common count. (*Parker* v. *Shell Oil Co.*, 29 Cal.2d 503, 512 [175 P.2d 838]; *Nisbet* v. *Rhinehart*, 2 Cal.2d 477, 482 [42 P.2d 71]; *Wood* v. *Mesmer*, 46 Cal.App. 257, 259 [189 P. 134]; 1 Stanbury, Cal. Trial & Appellate Practice, § 718, p. 795.)

■ A finding of ultimate fact carries with it an implied finding of all evidentiary facts necessary to support it and an implied finding against any other possible ultimate fact necessarily inconsistent with it. (See *McKinley* v. *Buchanan*, 176 Cal.App.2d 608, 615 [1 Cal.Rptr. 573]; *Jones* v. *Pleasant Vally Canal Co.*, 44 Cal.App.2d 798, 804-805 [113 P.2d 289].)

■ Defendant's next contentions relate to purported unprofessional conduct on the part of her original attorneys. She asserts that the trial court abused its discretion in denying her motion for new trial.

It appears from the record that plaintiff's attorney, Mr. Lester M. Fleischner, rented space from defendant's original attorneys, the firm of Taylor, Sherman & Heller. The chronology of significant events with reference to this phase of the case is as follows: Defendant received a special delivery letter dated March 20, 1961, from the law firm of Taylor, Sherman & Heller. This letter provides as follows in pertinent part:

''After you left the office this afternoon I received some information which I felt should be brought to your attention immediately. After you left, Mr. Fleischner, who rents one of the offices in our suite, heard your name mentioned and stated that he was going to be involved in litigation with a person having a similar name. On investigating, it appears that you are one and the same person. Mr. Fleischner represents Leonard Levine, dba Leonard's Typo Service, and I understand intents to institute a suit for moneys due in the near future. If you are the Alice Armstrong who will be involved in that matter, would you please notify us immediately.

''Although Mr. Fleischner is not a member of this firm, he does rent space from us, and on occasion does do work for us. While there would not necessarily be a conflict of interest, we would be rather hesitant to represent you and would do so

only upon a full disclosure and after a full discussion with you.

"I called Mr. Taylor on this matter and he asked that I send the above letter.

"Again, would you please contact this office at once, and ask to speak to Mr. Taylor or myself."

On March 30, 1961, plaintiff, represented by Mr. Lester M. Fleischner, filed his complaint for money.

On May 22, 1961, defendant, represented by the law firm of Taylor, Sherman & Heller, filed her verified answer to plaintiff's complaint.

On November 30, 1961, defendant and the law firm of Taylor, Sherman & Heller executed a substitution of attorneys whereby "Defendant . . . hereby substitutes ALICE CATT ARMSTRONG in propria persona in the above-entitled matter in the place and stead of Taylor, Sherman & Heller."

On December 12, 1961, defendant substituted "ARTHUR K. SNYDER as attorney in the above-entitled matter in the place and stead of ALICE CATT ARMSTRONG in propria persona."

On February 7, 1962, defendant substituted "Raymond A. Nelson as attorney in the above entitled action in the place and stead of Arthur K. Snyder."

After the trial and judgment defendant employed the law firm of Warner, Sutton & Warner, her present attorneys. This latter law firm represented defendant on her motion for new trial.

On November 19, 1962, Judge Meyer denied defendant's motion for new trial. A memorandum of decision was filed that date and we hereby adopt what is stated therein in pertinent part as follows:

"Defendant contends that a new trial should be granted because of a connection between the firm of attorneys who represented her and the attorney who represented plaintiff herein.

"Her affidavit in this matter discloses that she employed the firm and plaintiff thereafter employed his attorney, the latter of whom rents office space from the former; her attorneys thereupon advised her of this situation prior to the filing of the complaint herein. It is apparent from the file herein that after this communication of information, said firm continued as defendant's counsel until after her answer was filed. She thereafter twice substituted other counsel prior to the trial.

"Neither of these two counsel raised any question as to the

office association or sought to amend her answer on file. Apparently, neither felt hindered in presenting defenses nor that any interest was jeopardized. Only counsel employed after the trial seeks to make a point of the office connection, and then on the basis that maybe there was skullduggery, but does not specify of what it consisted.

"Notwithstanding the foregoing, the court has carefully examined its notes and has read the entire reporter's transcript to determine whether there was the possibility that anything had been denied to the defendant because of the office association of counsel.

"Nothing appears except the suggestion at one point that defendant gave the original of a letter, from plaintiff to her, to her attorneys, and it may have reached plaintiff's counsel. The mere statement of the suggestion demonstrates the immateriality of the occurrence if it did happen, for plaintiff introduced a carbon copy thereof.

"It is true that when shown the carbon copy, defendant expressed the belief that the copy differed from the original because it contained the word 'corrections' (Tr. p. 50, lines 6-11), and this might mean plaintiff could charge for his own typographical errors. Certainly this court did not and cannot so interpret the language used. Interestingly, plaintiff [*sic*] in her very next answer also used the word 'corrections' (Tr. p. 50, lines 13-15). Later defendant testified that she had received the original of which the copy was introduced (Tr. p. 79, lines 19-23). If the original did reach the hands of adverse counsel, defendant suffered not a whit.

"The principal contentions herein were whether there was a subsequent modification of the terms of the original agreement and if not, how many hours plaintiff spent on that type of work which was to be charged for at the rate of nine dollars per hour. Plaintiff [*sic*] testified as to the former, and had nothing more substantial than her personal convictions as to the number of hours plaintiff devoted to the revision work. In such a case the office connection of counsel would appear to have been of no significance, and the only direction in which information could leak would have been toward defendant."

The judgment is affirmed.

Wood, P. J., concurred.

A petition for a rehearing was denied December 11, 1963, and appellant's petition for a hearing by the Supreme Court was denied January 7, 1964.