Filed 2/29/16

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| JON TAYLOR et al., | |
| Plaintiffs and Respondents, | C074883 |
| v. | (Super. Ct. No. MCV0058837) |
| NU DIGITAL MARKETING, INC., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Placer County, Suzanne I. Gazzaniga, Judge. Affirmed.

Law Offices of W. Steven Shumway and W. Steven Shumway for Defendant and Appellant.

DUGGAN LAW CORPORATION and Jennifer E. Duggan for Plaintiffs and Respondents.

In this unlawful detainer action, judgment was entered in favor of plaintiffs, Jon and Kimberly Taylor, owners of real property located in Auburn, and against defendant Nu Digital Marketing, Inc., that acquired possession of the property through an

1

agreement titled, "Contract of Sale Residential Property," but that the trial court found to be a lease notwithstanding the title. Defendant appeals, contending plaintiffs' complaint did not state a cause of action for unlawful detainer because the agreement was a contract of sale, and a defaulting buyer in possession of property under such a contract is not subject to removal by the summary method of unlawful detainer. We conclude the agreement was both a lease and a contract of sale, but because possession was achieved through the lease terms of the agreement, unlawful detainer was properly used to regain possession.

FACTS

*The Agreement*

In August 2012, plaintiffs and defendant entered into an agreement, titled, "Contract of Sale Residential Property," under which plaintiffs (designated "Seller" in the agreement) agreed to sell a piece of property to defendant (designated "Buyer" therein) for $1,250,000 subject to the following terms and conditions:

Paragraph One required defendant to "consummate" the purchase "within 60 months of the execution date of [the] agreement" by making "payment" of the purchase price, i.e., $1,250,000 through a mutually acceptable title company that would also serve as escrow agent.

Paragraph Two purported to divide the purchase price into five components: (1) a grant of equity in defendant corporation (referred to as the "Equity Grant"); (2) payment of all property taxes and insurance costs from the move-in date; (3) payment of all Home Owners Association fees and any related penalties or special assessments; (4) the "Down Payment" we describe below; and (5) "Probationary Installment" payments of $2,300 per month for 60 months (also referred to as "Probationary Payments"). The paragraph also provided the probationary installment payments "will increase by any increase in the payment on [the plaintiff's] adjustable rate mortgage," that "may adjust upward effective with the March payment each year." While designated a component of the purchase

2

price, probationary installment payments did not go toward the purchase price at all. Instead, only down payment amounts were credited toward the purchase price of the property. In turn, only "payments in excess of the minimum monthly payment shall be credited to the Down Payment." For the first 7 months of the agreement, defendant agreed to make such an additional payment (designated an "Additional Probationary Installment") of $500 per month (and $1,000 per month thereafter unless defendant obtained personal guarantees of its officers and the wife of one of the officers) that would be credited toward the down payment. Thus, only payments made in excess of the monthly probationary installment payment were to be credited toward the purchase price of the property.

Paragraph Three provided: "Buyer shall have the right to possession of the Property . . . from the day (i) Buyer has paid to Seller the Probationary Payment, and (ii) delivered to Seller a fully-executed copy of this Agreement, and (iii) delivered to Seller the Equity Grant, and (iv) Buyer has deposited the Additional Probationary Installments. Buyer's possession of the Property shall be with all of the attendant benefits and burdens of ownership, while the Probationary Payments are being paid. If, for any reason, Buyer shall fail to make a timely payment of the Probationary Payments, on/or before they are Delinquent, as required by the terms of this Agreement, Seller may, at its sole discretion, serve upon Buyer a Five (5)-Day Notice to Quit. If Buyer has not timely cured the Probationary Payment default set forth in the Five-Day Notice to Quit within Five (5) calendar days of the service of said Notice, Buyer shall immediately and cooperatively vacate the premises, leaving the Property in as good or better condition than when Buyer first obtained possession, and Seller can obtain Possession."

Paragraphs Four through Seventeen set forth additional terms not relevant to the resolution of this appeal.

## The Complaint

In June 2013, plaintiffs filed an unlawful detainer complaint, alleging the above described agreement created a tenancy between plaintiffs and defendant, the terms of which defendant breached after the probationary installment payments (that the complaint refers to as "rent") increased to $4,216.48, in accordance with the provision allowing for an upward adjustment of such payments to match plaintiff's adjustable rate mortgage payment. Plaintiffs also alleged defendant was served with a five-day notice to pay $15,310.23 in rent or quit the premises, as contemplated in Paragraph Three of the agreement, with which defendant did not comply. The complaint requested possession of the property, the $15,310.23 sum sought in the five-day notice, additional damages in the amount of the fair rental value of the property for each day defendant remained in possession after the notice was served, insurance costs, court costs, and an order declaring the agreement forfeited.

## Trial and Decision

A court trial was held in August 2013. Defendant filed a trial brief arguing the plaintiffs' complaint did not state a cause of action for unlawful detainer because defendant was not a tenant, but a buyer in possession of the property under a contract of sale. The trial court disagreed and ruled the complaint properly stated a cause of action for unlawful detainer, explaining: "[W]hile the agreement . . . is titled 'Contract of Sale Residential Property,' this Court finds the contract to be a lease agreement as supported by the evidence. This Court finds, as set forth in section 2(E) . . . of the agreement, the defendant was obligated to make monthly 'probationary installment' payments which did not credit to any down payment. In addition, in section 3 of the agreement titled 'POSSESSION' in Exhibit 2, clear remedies are stated for the plaintiff should defendant default under the terms of the agreement. The agreement specifically states, 'If the Buyer has not timely cured the Probationary Payment default set forth in the Five-Day Notice to Quit within Five (5) calendar days of the service of said Notice, Buyer shall immediately

4

and cooperatively vacate the premises, leaving the property in as good or better condition than when Buyer first obtained possession, and Seller can obtain possession.' These are remedies available to landlords pursuant to Code of Civil Procedure, section 1161, et seq. Defendant's default on the 'probationary installment' payments gives the Plaintiff a right to obtain possession of the property pursuant to section 3 of the agreement. The Court also finds the 5 day notice pursuant to section 3 of the agreement was lawfully served. Accordingly, the Court finds the contract at issue is a lease agreement and also finds the plaintiff is entitled to possession." In addition to awarding possession to plaintiffs, the trial court awarded damages in the amount of $31,683.68 and declared the agreement forfeited. The trial court entered judgment in favor of plaintiffs, from which defendant appeals on the judgment roll alone.

## DISCUSSION

### I

### *Standard of Review*

" 'A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' [Citations.]" (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564, italics added.) Where, as here, the appeal is on the judgment roll alone, "[t]he question of the sufficiency of the evidence to support the findings [of the trial court] is not open." (*Bristow v. Morelli* (1969) 270 Cal.App.2d 894, 898; *Allen v. Toten* (1985) 172 Cal.App.3d 1079, 1082.) Instead, "the evidence is conclusively presumed to support the findings, and the only questions presented are the sufficiency of the pleadings and whether the findings support the judgment." (*Bristow v. Morelli*, *supra*, 270 Cal.App.2d at p. 898.)

Here, defendant challenges the sufficiency of the complaint to state a cause of action for unlawful detainer, arguing the agreement between plaintiffs and defendant, that

5

was attached to the complaint, created a buyer-seller relationship as opposed to a landlord-tenant relationship.[1]  We review issues of contract interpretation de novo unless there is an issue on which extrinsic evidence was properly admitted and there is a conflict in that evidence, in which case we review the trial court's interpretation under the substantial evidence standard.  (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865-866 & fn. 2.)

## II

### *Sufficiency of the Complaint to Plead an Action for Unlawful Detainer*

"Unlawful detainer actions are authorized and governed by state statute.  (Code Civ. Proc., § 1161 et seq.)  The statutory scheme is intended and designed to provide an expeditious remedy for the recovery of possession of real property." (*Larson v. City and County of San Francisco* (2011) 192 Cal.App.4th 1263, 1297, citing *Birkenfeld v. City of Berkeley* (1976) 17 Cal.3d 129, 151.)  "The remedy is available in only three situations: to a lessor against a lessee for unlawfully holding over or for breach of a lease; to an owner against an employee, agent, or licensee whose relationship has terminated; and to a purchaser at an execution sale, a sale by foreclosure, or a sale under a power of sale in a mortgage or deed of trust against the former owner and possessor." (*Greene v. Municipal Court* (1975) 51 Cal.App.3d 446, 450 (*Greene*).)  Unlike the foregoing situations, "[a] vendee in possession of land under a contract of sale who has defaulted in the payment of an installment of the purchase price, is not subject to removal by the summary method of unlawful detainer." (*Id*. at p. 451; *Francis v. West Virginia Oil Co.* (1917) 174 Cal. 168, 169-171 (*Francis*); *Goetze v. Hanks* (1968) 261 Cal.App.2d 615, 617 (*Goetze*).)

---

[1]     "When a plaintiff attaches a written agreement to his [or her] complaint, and incorporates it by reference into his [or her] cause of action, the terms of that written agreement take precedence over any contradictory allegations in the body of the complaint." (*Kim v. Westmoore Partners, Inc.* (2011) 201 Cal.App.4th 267, 282.)

Thus, we must determine whether the agreement entered into between plaintiffs and defendant created a landlord-tenant relationship, as alleged in the complaint, or a buyer-seller relationship, as claimed by defendant. "The relationship created by the agreement must be characterized by reference to the rights and obligations of the parties and not by labels." (*Greene*, *supra*, 51 Cal.App.3d at p. 450.) For example, in *Greene*, the plaintiff and the defendants entered into a conditional sale contract under which the plaintiff agreed to sell, and the defendants agreed to buy, certain real property for $49,500, payable by $2,000 as a down payment with the remaining balance payable at the rate of $350 per month. The plaintiff filed an unlawful detainer complaint, alleging the defendants were delinquent in installments of "rent," were served with notice to cure the default or return possession of the property, and continued in possession without curing the default. The label, "rent" was based on a provision stating that, upon any default by the buyer and the failure of the buyer to cure such default within 10 days of receiving notice thereof, "all moneys theretofore paid by buyer shall belong to seller as rent and compensation for the use and occupancy of [the] property." (*Id*. at pp. 448-449.) The Court of Appeal held the complaint failed to state a cause of action for unlawful detainer, concluding "[t]he rights and obligations of plaintiff and defendants are those of seller and buyer in a conditional sale of real property," rather than those of landlord and tenant, notwithstanding the provision purporting to convert the down payment and subsequent installment payments into rent upon default. (*Id*. at pp. 450-451; see also *Francis*, *supra*, 174 Cal. at pp. 169-171 [seller of real property under a contract of sale may not use summary method of unlawful detainer to regain possession from a buyer who has defaulted in the payment of an installment of the purchase price]; *Goetze*, *supra*, 261 Cal.App.2d at p. 617 [same].)

However, in *Provouskivitz v. Snow* (1977) 74 Cal.App.3d 554 (*Provouskivitz*), the Court of Appeal held the complaint stated a valid cause of action for unlawful detainer where the parties entered into both a contract of sale and a lease agreement, each of

which referenced the other, and where the agreements collectively provided the sale was conditioned upon the outcome of certain litigation and the buyer-lessee took possession of the property under the terms of the lease. (*Id*. at pp. 556-557.) The court explained: "To hold that in any case where there exists a contract to sell there cannot also exist a valid lease agreement is patently erroneous. So long as possession is achieved through the landlord-tenant relationship, unlawful detainer may properly be utilized to regain possession. (Code Civ. Proc., §§ 1161, 1161a.) The fact, if it be a fact, that rent may be credited against a purchase price, in whole or in part, does not, in and of itself, transfer possession from a landlord-tenant relationship to one of purchaser and seller." (*Id*. at p. 558.)

The agreement at issue in this case is titled, "Contract of Sale Residential Property" and refers to plaintiffs and defendant as "Seller" and "Buyer," respectively, throughout. However, as the foregoing authorities make clear, we must go beyond these labels and determine the rights and obligations of the parties under the agreement. Unlike *Greene, supra*, 51 Cal.App.3d 446, *Francis, supra*, 174 Cal. 168, and *Goetze, supra*, 261 Cal.App.2d 615 the agreement in this case did not require the "buyer" to make a down payment and then installment payments on the purchase price until the total sum was paid off. Instead, defendant was required to make a down payment (in installments of $500 per month for 7 months, continuing at $1,000 per month if required personal guarantees were not executed), and was also required to make monthly probationary installment payments, in the amount of plaintiffs' mortgage payment, for a term of 60 months. Importantly, possession of the property was conditioned upon defendant's continued payment of the probationary installment payments. However, none of these payments went to pay off the purchase price. Only payments made in addition to these payments went toward the purchase price. Even then, they were to be added to the down payment. Thus, at the end of the 60-month term of the agreement, defendant would have paid a sizable sum in probationary installment payments in order to remain in possession

8

of the property and would have made a down payment of at least $3,500; the remaining balance on the $1,250,000 purchase price would have to be paid in full by the end of the 60 months in order for defendant to own the property.

We conclude the probationary installment payment provisions set forth a 60-month lease. While defendant also agreed to purchase the property within the lease term, possession of the property was conditioned upon payment of the probationary installments, which entitled defendant only to continued possession, and were therefore rent. (See Black's Law Dict. (10th ed. 2014) p. 1488, col. 1 ["rent**,** . . . *n.* 1. Consideration paid, usu. periodically, for the use or occupancy of property (esp. real property)"].) This conclusion is bolstered by the fact that the agreement provided plaintiffs, in the event of non-payment of a probationary installment, with a landlord-tenant remedy of serving defendant with a five-day notice to pay rent or quit the premises. As in *Provouskivitz*, because possession of the property was achieved through the landlord-tenant relationship, as opposed to that of vendor-vendee, unlawful detainer was an appropriate method of regaining possession of the property. Indeed, in *Provouskivitz*, the court reached this conclusion even if the rent in that case was later to be credited toward the purchase price. (*Provouskivitz*, *supra*, 74 Cal.App.3d at p. 558.) Here, the agreement states quite clearly the probationary installment payments will not be credited toward the purchase price.

Moreover, to the extent the provisions requiring defendant to make monthly probationary installment payments are ambiguous as to whether such payments are properly understood to be rent, the trial court received extrinsic evidence to resolve the ambiguity. (See *Parsons v. Bristol Development Co.*, *supra*, 62 Cal.2d at p. 865 [extrinsic evidence admissible to interpret an agreement, but not to give it a meaning to which it is not reasonably susceptible].) We do not have a record of the trial testimony. However, the exhibits admitted into evidence confirm the parties themselves understood the probationary installment payments to be rent. For example, Exhibit 8 was comprised

9

of e-mail correspondence between one of the plaintiffs and one of the defendant's officers, in which both parties referred to these payments as "rent." None of the exhibits included in the record evidence a contrary understanding. Without a record of the trial testimony, we must conclusively presume it would also support the trial court's conclusion, and ours, that these payments amounted to rent.

In short, because defendant's possession of the property was achieved through the landlord-tenant relationship, unlawful detainer was properly used by plaintiffs to regain possession.

## DISPOSITION

The judgment is affirmed. Plaintiffs Jon and Kimberly Taylor shall recover their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)


_____/s/_____
HOCH, J.

We concur:


_____/s/_____
ROBIE, Acting P. J.


_____/s/_____
MURRAY, J.