Filed 1/7/22  American Express Bank v. Ung CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| AMERICAN EXPRESS BANK, | C089959 |
| Plaintiff and Respondent, | (Super. Ct. No. 34-2015-00180773-CU-CL-GDS) |
| v. | |
| VICTOR UNG, | |
| Defendant and Appellant. | |

Plaintiff American Express Bank (American Express) filed a complaint against defendant Victor Ung (Victor) to recover the unpaid balance on a business credit card. The complaint alleged common counts for account stated, open book account, and quantum meruit.  After a bench trial, the trial court entered judgment against Victor for damages in the amount of $222,779.55, plus costs.

On appeal, Victor contends the trial court erred when it granted judgment against him because he was merely an "authorized user" and not the "account holder."  He also contends the trial court abused its discretion in denying his motions in limine, which

1

sought to exclude testimony and evidence presented by Elizabeth Ung (Elizabeth), Victor's former business partner, and American Express. We shall modify the judgment to correct a minor clerical error in the amount of damages, but otherwise affirm.

BACKGROUND FACTS

Victor has elected to bring this appeal on a partial clerk's transcript without a reporter's transcript of the trial or an agreed or settled statement. This is referred to as a "judgment roll" appeal. (*Allen v. Toten* (1985) 172 Cal.App.3d 1079, 1082.) On such an appeal, the trial court's findings are conclusively presumed to be supported by substantial evidence. (*Ehrler v. Ehrler* (1981) 126 Cal.App.3d 147, 154 (*Ehrler*).) Accordingly, our summary of the facts is based upon the trial court's written findings, which we quote extensively below. (*Bristow v. Morelli* (1969) 270 Cal.App.2d 894, 896.)

"In 2004, Elizabeth and Victor were partners in running Bing's Market. Bing's Market is not an LLC. It is run as a 'DBA' and each defendant is sued individually and 'DBA Bing's Market.'

"In January, 2004, Elizabeth applied for, and was issued, an American Express Costco business credit card. American Express sent to Elizabeth a nine page 'Cardmember Agreement' [citation]. The agreement states 'when you or an Additional Card member, as defined below, use the Account (or sign or keep a card), you and the Additional Cardmember agree to the terms of the Agreement.' The Agreement defines '[C]ompany' as [']the business for which the Account is established[;]' and defines 'You and Your' as 'the Basic Cardmember and the Company.' The card was issued to Elizabeth and Bing's Market.

"In March 2004, a second card was issued, at the request of Elizabeth, under the same main account, to Victor Ung and Bing's Market . . . . Victor was not sent his own Card Member Agreement. Nor did he sign any formal written contract prior to issuance of the card.

2

"Victor's card activity was documented in monthly statements between 2005 and 2015. The monthly statements were sent to Bing's Market for the account, listing separately the balances for each card user. [Citation.]

"According to Elizabeth's testimony, in August, 2013, she stopped working for Bing's Market, and no longer considered herself an owner. By this time, Elizabeth had no outstanding balance on the card issued to her. Victor became the sole owner. [Elizabeth] testified she called American Express in August 2013, to close her account, and believed it was closed.

"During Victor's testimony, he did not deny using the credit card to run his business. Nor did he dispute that Elizabeth stopped working for Bing's Market in August 2013. With respect to Victor's card, he had made some payments the last two years the account was open. . . . By October 27, 2014, the balance rose to $192,632.35, all due to charges made by Victor. [Citation.] By November 2014, the account was in default. The last billing statement was sent in March, 2015. According to American Express, it never received any written objection regarding the balance owed on Victor's card. By March 2015, the outstanding balance owed related to Victor's charges amounted to $222,779.55."

PROCEDURAL HISTORY

In June 2015, American Express filed a complaint against Elizabeth to collect the outstanding balance on the business credit card. Approximately two years later, in July 2017, American Express and Elizabeth signed a confidential compromise agreement (settlement agreement) by which American Express agreed not to pursue her for the balance on the account in exchange for her cooperation in pursuing claims against Victor. Pursuant to the agreement, American Express and Elizabeth filed a joint stipulation for an order granting American Express leave to name Victor as an additional defendant. The court approved the stipulation and American Express filed a first amended complaint against Elizabeth and Victor. In February 2018, American Express filed a second

3

amended complaint. The second amended complaint, which is the operative complaint, alleged causes of action against Elizabeth and Victor (each individually and doing business as Bing's Market) for open book account, account stated, and quantum meruit.

The matter was tried in a one-day bench trial on May 13, 2019. American Express called Elizabeth, Victor, and its assistant custodian of records to testify as witnesses. Victor did not call any witnesses. At the close of evidence, American Express withdrew its claims against Elizabeth. The court then took the matter under submission.

On May 15, 2019, the trial court issued a signed opinion and order for judgment, finding in favor of American Express and against Victor on each cause of action. The court specifically found that "[an] obligation to pay is implied by the business relationship between Victor and [American Express], the monthly statements mailed to his business stating the amounts owed, the manner in which he responded to the monthly statements by making payments for his use, and the failure to dispute the charges within a reasonable amount of time. Victor may not have been the 'account holder' but the evidence convincingly established he was an authorized card user who benefitted from its use, responded to the monthly billings by paying for its use, and who now owes the outstanding balance for its use." The court also found that "Victor would be unjustly enriched if he was not liable to pay for the bill for his use of the credit card." Accordingly, the court found that Victor is liable to American Express for the outstanding balance on the account in the amount of $222,779.55. The order directed American Express to prepare a formal judgment.

On August 16, 2019, the court entered its judgment in favor of American Express for $222,779.55 in damages plus $770 in costs. Victor filed a premature notice of appeal on July 12, 2019, after the court issued its written opinion but before judgment was entered. We have exercised our discretion under California Rules of Court, rule 8.104(d)(2) to treat the notice of appeal as having been filed immediately after entry of judgment.

4

## DISCUSSION

## I

### *Standard of Review*

It is a fundamental tenet of appellate review that the lower court's judgment is presumed to be correct. (*Taylor v. Nu Digital Marketing, Inc.* (2016) 245 Cal.App.4th 283, 287-288.) All intendments and presumptions will be indulged to support the judgment on matters as to which the record is silent. (*Ibid.*) It is the appellant's burden to affirmatively show error by presenting meaningful legal analysis supported by citations to authority and facts in the record that support the claim of error. (*In re S.C.* (2006) 138 Cal.App.4th 396, 408.) The appellant also bears the burden of providing an adequate record to demonstrate the alleged error. " ' "Failure to provide an adequate record on an issue requires that the issue be resolved against [the appellant]." ' [Citations.]" (*People v. Accredited Surety & Casualty Co.* (2019) 34 Cal.App.5th 891, 900.)

"Where, as here, the appeal is on the judgment roll alone, '[t]he question of the sufficiency of the evidence to support the findings [of the trial court] is not open.' [Citations.] Instead, 'the evidence is conclusively presumed to support the findings,' " and our review is limited to determining whether the judgment is supported by the findings or reversible error appears on the face of the record. (*Taylor v. Nu Digital Marketing, Inc., supra*, 245 Cal.App.4th at p. 288; *Ehrler, supra*, 126 Cal.App.3d at p. 154.)

## II

### *Account Stated*

The trial court entered judgment against Victor based, in part, on a finding that American Express proved the elements for an account stated cause of action. Victor contends the trial court erred because it misunderstood and misapplied the law to the "undisputed facts." We find no reversible error.

5

An account stated is an agreement between parties that a certain sum shall be paid in discharge of an existing indebtedness. (*Zinn v. Fred R. Bright Co.* (1969) 271 Cal.App.2d 597, 600 (*Zinn*).)  To establish a claim for account stated, a claimant must show:  "(1) previous transactions between the parties establishing the relationship of debtor and creditor; (2) an agreement between the parties, express or implied, on the amount due from the debtor to the creditor; [and] (3) a promise by the debtor, express or implied, to pay the amount due."  (*Ibid.*)

Victor contends the trial court erred in finding that the elements for an account stated were satisfied.  He contends the "undisputed facts" establish that there was no debtor-creditor relationship between him and American Express and no agreement, express or implied, that Victor would pay the charges on the account.

Victor's claims are predicated on the cardmember agreement.  He contends that under the terms of the cardmember agreement, only the account holder is liable for the charges on the account, not additional cardmembers, because they do not have accounts with American Express.  Further, Victor notes, American Express modified the cardmember agreement, effective January 1, 2013, to remove language stating that "additional cardmembers" are personally liable for their charges and that American Express may seek payment from them "if neither the Company nor the Basic Cardmember pay."  He contends the plain language of the agreement therefore makes clear that American Express did not extend credit to him with the expectation that he would pay it back; it merely allowed him to use credit extended to Elizabeth, with the expectation that *she* would pay it back.

There are two fundamental flaws with Victor's approach.  The first is that American Express did not seek to hold Victor liable as an authorized user under the terms of the cardmember agreement.  Because the judgment is not premised on a finding of express contractual liability, Victor cannot prevail by defeating it.

6

The second is that Victor has mischaracterized (or ignored) several factual findings underpinning the trial court's decision, such as whether he had a preexisting business relationship with American Express, whether monthly account statements were sent to his business, and whether he could object to charges on the account. Because this is a judgment roll appeal, the trial court's findings of fact and conclusions of law are conclusively presumed to be supported by substantial evidence and are binding upon us unless error appears on the face of the record. (*Nielsen v. Gibson* (2009) 178 Cal.App.4th 318, 321; accord, *Bond v. Pulsar Video Productions* (1996) 50 Cal.App.4th 918, 924.)

Here, the trial court found that Elizabeth opened a "business credit card" account for the benefit of Bing's Market at a time when Elizabeth and Victor were "partners" in running that business. Under the cardmember agreement, both Elizabeth, as the person who applied for the account, *and Bing's Market*, as the business for which the account was established, were liable for charges added to the account. Monthly account statements, showing the balances for each card user, were sent to Elizabeth *and Bing's Market*, at the location of Bing's Market.

When Elizabeth left the business in August 2013, Victor became the "sole owner" of Bing's Market. At that time, Elizabeth had no outstanding balance on the card and believed—erroneously—that the account was closed. Nevertheless, Victor continued to use the account to run the business, incurring charges and making payments on the account. By November 2014, the account was in default, with an unpaid balance of $198,052.19, "all due to charges made by Victor." Victor did not dispute any of those charges.

Based on the record before us, the trial court did not err in concluding that American Express proved a claim for account stated. The court properly found a debtor-creditor relationship between Victor and American Express based either on (1) the express obligation of Bing's Market to repay charges under the terms of the cardmember agreement, which Victor assumed when he became the sole owner of the business, or

7

(2) an obligation implied in fact or law based on the circumstances. (See *Richey v. Pedersen* (1950) 100 Cal.App.2d 512, 519-520 [implied agreement to pay arose from defendant's employment of attorney]; Civ. Code, § 1621 ["An implied contract is one, the existence and terms of which are manifested by conduct"].)

The trial court also properly found an implied agreement that Victor would pay the charges on the statement of account. (*Scott v. Pacific Gas & Electric Co.* (1995) 11 Cal.4th 454, 463 [whether conduct creates an implied agreement is generally a question of fact]; see also *Twenty-Nine Palms Enterprises Corp. v. Bardos* (2012) 210 Cal.App.4th 1435, 1452 [a sole proprietorship is not a legal entity separate from its individual owner].) The agreement necessary to establish an account stated may be, and frequently is, implied from the circumstances. (*Zinn, supra*, 271 Cal.App.2d at p. 600.) In the "usual situation" it comes about when a statement is rendered to a debtor, and the debtor fails to object to the statement within a reasonable time. (*Ibid*.) Although our courts have not yet decided the issue, "[a] number of jurisdictions [outside California] have applied this principle in the context of credit card debt, concluding that where a debtor receives and does not object to a credit card statement, an agreement to the amount due can be inferred." (*Professional Collection Consultants v. Lauron* (2017) 8 Cal.App.5th 958, 968, fn. omitted; see also *Ordinario v. LVNV Funding, LLC* (9th Cir. 2017) 721 Fed. Appx. 602, 603; *O'Bryne v. Portfolio Recovery Associates LLC* (9th Cir. 2015) 596 Fed. Appx. 565, 566; *Hashimi v. CACH, LLC* (S.D.Cal. Aug. 22, 2012, No. 12CV1010-MMA) 2012 U.S.Dist. LEXIS 118988, at pp. *11-15; *Walker v. Citibank, N.A.* (Tex.Ct.App. 2015) 458 S.W.3d 689, 692; *Capital One Bank (USA), N.A. v. Denboer* (Iowa Ct.App. 2010) 791 N.W.2d 264, 273-275.)

Here, an agreement reasonably may be implied based on the preexisting business relationship between Victor's solely owned business (Bing's Market) and American Express; Victor's continued use of the card to run his business; his history of incurring charges and making payments on the account on behalf of his business; the monthly

statements mailed to his business stating amounts owed; and his failure to dispute those charges. We reject Victor's argument that he made over $200,000 in payments gratuitously despite having no liability for the debt.

In supplemental briefing, Victor argues there can be no judgment for account stated because the last four monthly statements were sent to a different address. However, we cannot ignore that Victor, in his capacity as Bing's Market, *is the one who requested* American Express send the statements to a different address, and that the trial court found all the monthly statements were "sent to Bing's Market." On the judgment roll record before us, we are unable to conclude that Victor never received the last four monthly statements. (*Ehrler, supra*, 126 Cal.App.3d at p. 154 [trial court's findings are presumed to be supported by substantial evidence].)

The parties also addressed in supplemental briefing a minor discrepancy between the amount of the judgment ($222,779.55) and the outstanding balance of the last monthly statement ($222,822.92). Having reviewed the supplemental briefs, we conclude the discrepancy was the result of a clerical error by the trial court, and therefore modify the judgment to conform to the balance stated in the last monthly statement. (*Hennefer v. Butcher* (1986) 182 Cal.App.3d 492, 506; *Conservatorship of Tobias* (1989) 208 Cal.App.3d 1031, 1035.)

Because we conclude the claim for account stated is sufficient to sustain the judgment, it is unnecessary for us to discuss whether the judgment also could be sustained based on the other theories alleged in the complaint (open book account and quantum meruit). (*Crogan v. Metz* (1956) 47 Cal.2d 398, 403; *Zinn, supra*, 271 Cal.App.2d at p. 604; *McCloud v. Roy Riegels Chemicals* (1971) 20 Cal.App.3d 928, 935-936.)

9

## III

### *Motions in Limine*

Victor also challenges the trial court's rulings on his pretrial motions in limine. Specifically, he contends the trial court erred in denying his first, second, and third motions in limine, which sought to exclude evidence on the grounds it would be unfairly prejudicial in light of the settlement agreement between Elizabeth and American Express.

A.     *Additional background*

At the start of trial, Victor filed four motions in limine. The first three motions sought to bar Elizabeth from testifying as a witness for American Express; to bar Elizabeth from introducing certain exhibits, including American Express's discovery responses; and to bar American Express from introducing certain evidence, including its cardmember agreement, monthly statements, correspondence, and Elizabeth's discovery responses. These three motions were premised on the argument that Elizabeth was not a true defendant in the case due to the settlement agreement. The fourth motion in limine sought to compel disclosure of the settlement agreement and its receipt into evidence.

The trial court denied the first three motions and initially deferred ruling on the fourth. During trial, after an in camera inspection of the settlement agreement, the court granted the motion to admit the settlement agreement into evidence under seal.

B.     *Analysis*

Victor argues that the motions to exclude the evidence from Elizabeth and American Express should have been granted due to the settlement agreement between them. He argues that Elizabeth was not a true defendant and, therefore, her trial testimony and the information relating to her account should have been excluded as irrelevant and unfairly prejudicial.

We review the trial court's rulings on admissibility of evidence for abuse of discretion. (*Mardirossian & Associates, Inc. v. Ersoff* (2007) 153 Cal.App.4th 257, 269.) We find no abuse of discretion here.

10

We acknowledge the risk that a settlement conditioned on a defendant's continued participation at trial can result in a fraud upon the court where it conceals the potential bias of an important witness in the action.  (*Everman v. Superior Court* (1992) 8 Cal.App.4th 466, 471.)  But we agree with our colleagues in other appellate courts that such an agreement is not fraudulent or improper *as a matter of law*.  (*Everman, supra*, 8 Cal.App.4th at pp. 471-472; accord, *Diamond v. Reshko* (2015) 239 Cal.App.4th 828, 844-847; see also *Alcala Co. v. Superior Court* (1996) 49 Cal.App.4th 1308, 1315 [due process not violated where a settling defendant cooperates with plaintiff in producing evidence]; *City of Los Angeles v. Superior Court* (1986) 176 Cal.App.3d 856, 863-864 [same]; Code Civ. Proc., § 877.5 [allowing sliding scale agreements with appropriate disclosure]; *Moreno v. Sayre* (1984) 162 Cal.App.3d 116, 125-126 [discussing purpose of Code Civ. Proc., § 877.5, subd. (a)(2)].)  Any concerns about concealing the possible bias of a settling defendant are remedied by disclosing the terms of the settlement to the trier of fact.  (*Everman*, at p. 473.)  Such disclosure removes the potential unfairness in the proceedings by allowing the trier of fact to weigh the credibility of the settling defendant " 'in the light of the knowledge that [the settling defendant] was not . . . adverse to the plaintiff.' "  (*Id*. at p. 471, italics omitted.)

The court below was informed of the nature of the settlement agreement prior to trial, and the settlement agreement was admitted into evidence during trial.  The court, as the trier of fact, was able to consider the settlement agreement when evaluating the credibility of Elizabeth's testimony.  There was no fraud upon the court and the trial court did not abuse its discretion in denying Victor's motions.

Victor contends the trial court should have reviewed the settlement agreement sooner, but he fails to explain *how* this was prejudicial error, particularly in the context of a bench trial.  (See *United States v. Heller* (9th Cir. 2009) 551 F.3d 1108, 1111-1112 [motions in limine have limited utility in bench trials].)  Due to his failure to support the

11

contention with reasoned argument and citation to authority, we treat the point as forfeited. (*Hernandez v. First Student, Inc.* (2019) 37 Cal.App.5th 270, 277.)

IV

*Validity of Settlement Agreement*

Victor also seeks to challenge the validity of the settlement agreement between Elizabeth and American Express, arguing that it is "void" because they failed to timely disclose the agreement under Code of Civil Procedure section 877.5. The argument lacks merit. The parties to the settlement agreement could not have violated section 877.5 because the requirements of that statute apply only to "sliding scale recovery agreement[s]." (Code Civ. Proc., § 877.5.) The settlement agreement at issue here was not a sliding scale recovery agreement. Elizabeth's liability under the agreement was in no way dependent on the amount which American Express was able to recover from Victor. Thus, the notice requirements of the statute did not apply.

DISPOSITION

We modify the judgment to correct a clerical error, increasing the amount of the damage award to conform to the balance in the last monthly statement, $222,822.92. As modified, we affirm the judgment. Each party is to bear its own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)

　　　　　　　　　　　　　　　　　　　　　　KRAUSE　　　　　　, J.

We concur:

　　　　BLEASE　　　　　　, Acting P. J.

　　　　MAURO　　　　　, J.